*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

              *Plaintiff-Appellee*,

        No. 12-3382

   *v.*

REGIS ADKINS,

              *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:11-cr-00537-1—James S. Gwin, District Judge.

Argued: April 24, 2013

Decided and Filed: September 5, 2013

Before: GRIFFIN and KETHLEDGE, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jessica Morton, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jessica Morton, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

[*] The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

————————————

**OPINION**

————————————

ZATKOFF, District Judge.  On November 22, 2011, a grand jury in the Northern District of Ohio returned an indictment charging Appellant Regis Adkins ("Adkins") with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Adkins pleaded guilty to the charge on January 9, 2012.

On March 19, 2012, the district court sentenced Adkins to 46 months of incarceration and three years of supervised release.  Adkins now appeals his sentence as procedurally and substantively unreasonable.  For the following reasons, we affirm the district court's sentence.

## I.  BACKGROUND

On October 18, 2011, the Cleveland Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives responded to a report of gunshots being fired at a Cleveland gas station.  When the officers arrived, the manager of the gas station provided them with a security video that had captured the shooting incident. The four-minute composite video of the gas station's surveillance footage, which was admitted without objection at sentencing, shows a white sport utility vehicle ("SUV") driving through the gas station's parking lot as Adkins appears to recognize the SUV.[1] At approximately, 21:22:32 of the video, Adkins is shown pulling a handgun from the walking cast boot he was wearing on his right foot.  Walking with the gun at his side and

—————————————

[1] In his reply brief, Adkins raises—for the first time—an objection to the video submitted by the government as Appendix B.  Adkins claims that Appendix B may not be the same video shown at sentencing.  He also alleges that Appendix B differs from a previous video—Appendix A—that was provided by the government and that Adkins used to prepare his appeal.  Adkins's objection is not well-taken.  With regard to the differences between the videos, Appendix A contains a single camera angle and appears upside-down to the viewer; Appendix B is correctly oriented to the viewer and contains multiple camera angles in split-screen format.  Although in different formats, the contents of both videos are identical. Additionally, Appendix B does appear to be the video shown at trial. When describing the video prior to playing it at sentencing, the government indicated that the video was "approximately four minutes long," and contained multiple camera angles.  R. 24: Tr. of Sentencing Hr'g, Page ID  83–84.  This description matches the characteristics of Appendix B.  More significant, however, is the fact that no one at the sentencing made any mention of the video appearing upside-down.

pointed to the ground, Adkins casually paced around and zipped up his hooded sweatshirt before raising the gun, pausing to take aim, and firing several rounds at the SUV as it drove away on an adjacent side street. On the left side of the screen, a bullet appears to strike the pavement in front of another vehicle parked near the SUV just as the SUV begins to drive away.

On November 22, 2011, the government filed a one-count Indictment against Adkins charging him as a felon in possession of ammunition under 18 U.S.C. § 922(g)(1). On January 5, 2012, Adkins pleaded guilty without a plea agreement and issued a statement accepting responsibility for his actions.

On March 19, 2012, Adkins appeared in the district court for sentencing. The Presentence Report ("PSR") recommended a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A). Adkins did not challenge the PSR's recommendation in his sentencing memorandum or orally at sentencing. Nor did he disagree with the government's position in its sentencing memorandum that Adkins committed the instant offense after sustaining a felony conviction for a crime of violence—criminal gang activity involving aggravated robbery and kidnapping—which triggered § 2K2.1(a)(4)(A)'s base level enhancement.

At sentencing, the district court calculated a base offense level of 20, implicitly adopting the PSR's finding that Adkins committed some part of the instant offense after sustaining a felony conviction of a crime of violence. The court then added four levels after finding that Adkins possessed ammunition in connection with another felony offense—aggravated assault. Because Adkins accepted responsibility, the court reduced the offense level by two, and subtracted an additional level at the government's request. Thus, the district court calculated a total offense level of 21.

The district court assessed Adkins's criminal history at four points, placing him in Category III. The court assigned three points for the attempted criminal gang activity conviction and added an additional point for a juvenile incident in which Adkins was charged with carrying a concealed weapon. In his sentencing memorandum, Adkins argued that he was neither found guilty nor placed on probation in connection with the

juvenile incident. Though acknowledging that the records of the juvenile incident were less than ideal, the district court overruled the objection. Based on a total offense level of 21 and a criminal history category of III, the court calculated an advisory range of 46 to 57 months.

The district court then considered Adkins's history and characteristics. The court made note of Adkins's extremely troubled family circumstances, including his mother's past drug use and his absentee father. The court balanced this against Adkins's previous use of drugs, his lack of work history and education, and the fact that he had previous involvement in violent incidents, including several cases involving firearms. The court noted that the median sentence for firearm violations by a Category III offender is 37 months. Nevertheless, the court ultimately imposed a sentence of 46 months to be followed by three years of post-release control. This appeal followed.

## II.  LEGAL STANDARD

This Court reviews sentences for procedural and substantive reasonableness. *Gall v. United States,* 552 U.S. 38, 51 (2007). First, the Court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* If no procedural error occurred, the Court must then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). The Court affords a rebuttable presumption of substantive reasonableness to sentences falling within the applicable Guidelines range. *Id.*

## III.  ANALYSIS

On appeal, Adkins presents four issues for the Court's consideration:  first, whether the district court erred in applying a four-level enhancement for possession of a firearm in connection with another felony pursuant to U.S.S.G. § 2K2.1(b)(6); second, whether the district court miscalculated his base offense level;  third, whether the district court improperly assigned a criminal history point for the alleged juvenile conviction; and fourth, whether the district court failed to adequately consider Adkins's personal history when considering the relevant factors under 18 U.S.C. § 3553(a).

### 1.  FOUR-LEVEL ENHANCEMENT UNDER § 2K2.1(B)(6)

A four-level enhancement to a defendant's base offense level applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  The increase applies if the government "establish[es], by a preponderance of the evidence, a nexus between the firearm and an independent felony."  *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (internal citations omitted).  "[A]nother felony offense" includes "any federal, state or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1, cmt. n.14(C); *United States v. Bullock*, 526 F.3d 312, 317 (6th Cir. 2008).  When considering a challenge to a § 2K2.1(b)(6) enhancement, we review the district court's factual findings for clear error, giving "due deference" to the district court's determination that the firearm was used or possessed "in connection with" another felony.  *United States v. Taylor*, 648 F.3d 417, 431–32 (6th Cir. 2011).  Pure questions of law are reviewed *de novo*.  *Id.* at 431.

The district court found that Adkins used a firearm "in connection with" committing aggravated assault when he fired shots at the SUV.  Adkins challenges the district court's application of § 2K2.1(b)(6) on two fronts.  First, Adkins claims that he fired the gun in self-defense and, as such, could not have committed aggravated assault.

Second, Adkins argues that the district court had an insufficient factual basis to conclude that he committed aggravated assault.

### *1. Self-defense*

Adkins acknowledges that he fired shots at the SUV, but claims to have done so in self-defense. He argues that the driver of the SUV initiated the altercation by firing shots at Adkins and the nearby vehicle containing his brother, girlfriend, and child. The district court found that self-defense was not supported by the record in this case. The district court's determination was not in error.

Under Ohio law, the burden falls on the defendant to demonstrate self-defense by a preponderance of the evidence. To do so, the defendant must show:

> (1) he was not at fault in creating the situation giving rise to the affray; (2) . . . he ha[d] . . . a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of . . . force; and (3) . . . he . . . [did] not . . . violate[ ] any duty to retreat or avoid the danger.

*State v. Williford*, 551 N.E.2d 1279, 1281 (Ohio 1990) (internal quotation marks omitted). "'If the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense.'" *Id.* (quoting *State v. Jackson*, 490 N.E.2d 893, 897 (Ohio 1986)).

Adkins failed to meet his burden of showing self-defense by a preponderance of evidence. First, Adkins failed to show—or even allege—that he did not give rise to the incident. Adkins cannot, by mere declaration, establish that he only fired shots in response to incoming gunfire. Indeed, the video gives no indication that Adkins was under fire but instead shows Adkins firing at the SUV after it departed the parking lot and was driving away—indicating that, at the very least, the driver of the SUV was attempting to leave the scene. *See State v. Jones*, 2002 WL 1041740, *3 (Ohio App. 8th Dist. 2002) (unpublished) ("appellant's argument that the shots were fired in self-defense . . . is without merit because the physical evidence revealed that the victim was shot from behind . . . as the victim fled.").

More significant is the fact that Adkins presented no testimony to support his self-defense claim, and the security video firmly dispels Adkins's characterization of the incident. The video is at odds with Adkins's claim that bullets were coming from the SUV, as the footage does not show bullets ricocheting near Adkins or his car. Instead, the video only shows Adkins's shell casings being discharged as he was firing his gun. *Id.* There is nothing to indicate that officers recovered any shell casings other than those found at the scene, which Adkins admitted to possessing. Even more notable, however, is the fact that Adkins simply does not act as though he is under gunfire. He does not appear to move with any urgency, nor does he attempt to seek any cover from the gunfire he alleges was coming from the SUV. Instead, Adkins stood completely upright, directly facing the SUV, and calmly raised his firearm, pointed it at the SUV, and fired several shots. In short, the security video contradicts Adkins's assertion that he was acting in self-defense.

Adkins makes much of the district court's statement at sentencing that there "may be some argument" to self-defense, and of the PSR noting that "review of the video suggested the defendant may have been firing return shots, in his defense[.]" These statements, however, are not fatal to the district court's finding. The district court used a preponderance of the evidence standard. Under this standard, some evidence that Adkins *may* have been acting in self-defense is not necessarily preclusive of an ultimate finding that Adkins was *not* acting in self-defense. After viewing the video, the district court ultimately found, in no uncertain terms, that it "[did not] find [self-defense] to be supported in this case." As discussed above, the video certainly supports such a finding. Based on these facts, Adkins did not meet his burden of demonstrating self-defense by a preponderance of the evidence.

### 2. *Felonious and/or Aggravated Assault*

At the sentencing hearing, the government argued that, by intentionally firing at the SUV, Adkins committed either felonious assault, in violation of Ohio Rev. Code § 2903.11, or aggravated assault, in violation of Ohio Rev. Code § 2903.12—both of which are punishable by imprisonment exceeding one year. The district court found that

there is "sufficient evidence that supports . . . by a preponderance of the evidence, that the Defendant was guilty of aggravated assault. I don't find sufficient evidence of felonious assault."

In Ohio, felonious assault is knowingly causing or attempting to cause physical harm to another by means of a deadly weapon. Ohio Rev. Code § 2903.11. Aggravated assault is knowingly causing or attempting to cause physical harm to another by means of a deadly weapon, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation by the victim. Ohio Rev. Code § 2903.12.

The record supports the district court's finding that Adkins used the ammunition in connection with felonious and/or aggravated assault. As discussed above, there is insufficient evidence to support Adkins's self-defense claim and Adkins offers no other justification. The video indisputably shows that Adkins raised his firearm, took aim, and fired several shots at an occupied vehicle. In the absence of self-defense or any other justification, the video alone is sufficient to show that Adkins knowingly caused or attempted to cause physical harm to another by means of a deadly weapon.

Adkins points out that the district court erred by making a finding of aggravated assault, while at the same time rejecting a finding of felonious assault. According to the district court, there is "sufficient evidence that supports that the Defendant . . . was guilty of aggravated assault. I don't find sufficient evidence on the felonious assault." Though hardly the significant error claimed by Adkins, the district court appears to have misconstrued the elements of the two offenses and their interplay. The essential elements of felonious assault and aggravated assault—knowingly causing or attempting to cause physical harm to another by means of a deadly weapon—are identical. *State v. Baker*, No. 3971, 1989 WL 65436 (Ohio Ct. App. June 16, 1989) *dismissed*, 545 N.E.2d 901 (Ohio 1989). In other words, aggravated assault is the same as felonious assault, albeit with a reduction in penalty where the fact finder concludes that a serious provocation existed. *State v. Carter*, 491 N.E.2d 709, 714 (Ohio 1985). Thus, the

district court's error in this regard was harmless. Accordingly, the district court correctly applied the enhancement under § 2K2.1(b)(6)(B).

## 2. PREVIOUS CONVICTION OF A CRIME OF VIOLENCE

At sentencing, the district court adopted the PSR's increased base offense level of 20, finding that Adkins was previously convicted of attempted criminal gang activity— a "crime of violence" warranting an enhancement under U.S.S.G § 2K2.1(a)(4)(A). The state court indictment charged Adkins with violating Ohio Rev. Code § 2923.42A by engaging in "criminal conduct" as part of a criminal gang.[2] The predicate criminal conduct was listed in the indictment as follows:

> assist[ing] in the commission of Aggravated Robbery . . . *and/or* Kidnapping . . . *and/or* Carrying Concealed Weapon . . . *and/or* Possession of Drugs . . . or as alleged [as substantive offenses] in Counts 1, 2, 3, 4, 7, all of which are incorporated as if fully restated herein.

(emphasis added). Adkins pleaded guilty to this charge and was sentenced to six months of imprisonment to be followed by three years of post-release control.

On appeal, Adkins argues—for the first time—that his attempted criminal gang activity conviction is not a qualifying "crime of violence" that warrants an enhancement under § 2K2.1(a)(4)(A).[3] Pointing to the indictment's use of the term "and/or," Adkins argues that he pleaded guilty only to the non-violent predicate offenses listed in the indictment—Carrying Concealed Weapon or Possession of Drugs.

The issue of whether a defendant's prior conviction constitutes a "crime of violence" requiring an increased base offense level under § 2K2.1(a)(4)(A) is a legal question that we review *de novo*. *See United States v. Martin*, 378 F.3d 578, 580 (6th Cir. 2004) ("giv[ing] fresh review to the legal question" of whether defendant had been convicted of a "crime of violence" for an enhancement under § 2K2.1(a)(4)(A)). Courts

---

[2] Count 8 was later amended to an attempt, rather than a completed offense.

[3] As noted by both parties, plain error review does not apply because the district court did not ask the *Bostic* question at sentencing. *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).

determine whether a crime is violent by using a categorical approach, *Taylor v. United States*, 495 U.S. 575, 602, (1990), whereby the courts "consider the offense generically" and "examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). If, however, it is possible to violate the state law in a way that amounts to a crime of violence and in a way that does not, we may consider the indictment, the plea agreement, the plea colloquy or "comparable judicial record[s]"—collectively known as *Shepard* documents—to determine whether the individual's actual conduct necessarily establishes the nature of the offense. *See United States v. Mosley*, 575 F.3d 603, 606 (6th Cir. 2009) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005); *United States v. Ford*, 560 F.3d 420, 422 (6th Cir. 2009)).

Because the criminal gang activity statute at issue here, Ohio Rev. Code § 2923.42, contemplates both violent and non-violent conduct, the government sought to introduce the state court indictment and journal entry as *Shepard* documents to show that Adkins necessarily pleaded guilty to a violent predicate offense.[4] Adkins challenges the use of such documents under *Shepard* and alternatively argues that, even if properly reviewable, the documents do not necessarily show that Adkins was convicted of a crime of violence.

It is against this background that we first turn to the threshold issue of whether a state court journal entry like the one here constitutes a valid *Shepard* document—a matter this Court has yet to specifically address. We find that it does.

In Ohio, a state court journal entry constitutes a judgment of conviction. *See* Ohio Crim. R. 32(C) ("A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence. . . . The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective

---

[4] Adkins asserts that the government waived its argument regarding the *Shepard* documents by not addressing this issue in its initial brief. However, because Adkins questioned his prior conviction of a violent crime for the first time on appeal, the government had no reason to present either document at sentencing. After Adkins first raised the issue, the government filed a Motion to take Judicial Notice of the indictment and journal entry, which we granted on April 22, 2013.

only when entered on the journal by the clerk."). *See also State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St. 3d 366, 370, 800 N.E.2d 361, 365 (2003) ("[An Ohio] court of record speaks only through its journal entries."). *See also Schenley v. Kauth*, 160 Ohio St. 109, 111, 113 N.E.2d 625, 626 (1953) ("A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.") (citation omitted). "Were the rule otherwise it would provide a wide field for controversy as to what the court actually decided." *Indus. Comm'n of Ohio v. Musselli*, 102 Ohio St. 10, 15, 130 N.E.2d 32, 34 (1921).

We have previously held that a state court judgment is reviewable under *Shepard* where a sentencing court seeks to determine—for sentence enhancement purposes—the offense to which a defendant pleaded guilty. *See United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006) ("A judgment falls within *Shepard's* exception for 'some comparable judicial record' to a plea colloquy or agreement, and therefore may be examined by a sentencing court.") (citing *United States v. Beasley,* 442 F.3d 386, 393–94 (6th Cir. 2006). Therefore, we find that a journal entry such as the one here constitutes a valid *Shepard* document that is properly considered by a court in determining the nature of a prior conviction.

Turning next to the information contained in the journal entry, we find it beyond dispute that Adkins pleaded guilty to a crime of violence. The journal entry reads as follows:

> ON A FORMER DAY OF COURT THE DEFENDANT PLEAD GUILTY TO ATTEMPTED, CRIMINAL GANG ACTIVITY 2923.02/2933.42A AS AMENDED IN COUNT(S) 8 OF THE INDICTMENT . . . . THE COURT IMPOSES A PRISON SENTENCE . . . OF 18 MONTH(S). . . . *POST RELEASE CONTROL IS PART OF THE PRISON SENTENCE FOR 3 YEARS FOR THE ABOVE FELONY(S) UNDER R.C. 2967.28.*

(emphasis added). The entry indicates that the state court imposed—as part of Adkins's sentence—a mandatory three-year term of post-release control under Ohio Rev. Code § 2967.28. Section 2967.28(B)(3) requires three years of post-release control "[f]or a felony of the third degree that is an *offense of violence* and is not a felony sex offense[.]"

Ohio Rev. Code § 2967.28(B)(3) (emphasis added).  Notably, the only other subsection permitting a maximum three-year post-release control term applies "if the *parole board* . . . determines that a period of post-release control is necessary for that offender."  Ohio Rev. Code § 2967.28(C) (emphasis added).  Section 2967.28(C) is inapplicable here, however, because the sentencing court—rather than a parole board—imposed Adkins's post-release control as part of his prison sentence.  *See State v. Fischer*, 128 Ohio St.3d 92, 99, 942 N.E.2d 332, 340 (finding that, where a defendant is subject to post-release control, the trial court must include the post-release control terms in the sentence).

Additionally, prior to his sentencing, Adkins was out on bond and was remanded to custody after sentencing.  *See* Motion to Take Judicial Notice, attachment 2.  At that point, Adkins had not yet been to the Ohio Department of Corrections and was not subject to parole board control.  Therefore, Adkins could not have received a mandatory three-year post-release control sentence under § 2967.28 without pleading guilty to a third degree felony that was a crime of violence.

Moreover, had Adkins pleaded guilty only to the concealed weapon or drug charges, the court would have been required to provide notice to Adkins about a discretionary post-release control term, of up to three years, that would be determined later by the Ohio Parole Board under § 2967.28(C) and (D)(1). The adult parole authority "determines whether [discretionary] post-release control is appropriate [under Sections 2967.28(C) and D(1)], not the trial court."  *State v. Warbington*, 129 Ohio App. 3d 568, 571, 718 N.E.2d 516, 518 (1998); *State v. Jones*, 2012 WL 4789820, *2 (Ohio App. 5th Dist. 2012) ("Appellant was never eligible for mandatory post-release control as his third degree felony identity fraud [i.e., non-violent] did not involve harm or the threat of harm.").  That the state court imposed a definite three-year term of post-release control indicates that a discretionary range did not apply.

Adkins attempts to neutralize the information contained in the journal entry by characterizing it as a "post-release control notation," akin to a "special sentencing factor notation" that arose in *Larin-Ulloa v. Gonzalez*, 462 F.3d 456, 468 (5th Cir. 2006).  We disagree with this characterization.  The "special sentencing factor notation" in

*Gonzalez*—that the offense in question involved a firearm—was not admitted to by the defendant during his plea, nor was the notation part of the judgment of conviction. *Id.* at 469 n. 13. Here, the post-release control provision was not a mere "notation"— it was part of Adkins's sentence. *See Woods v. Telb,* 89 Ohio St.3d 504, 512–13, 733 N.E.2d 1103 (2000) (finding post-release control part of the judicially imposed sentence). A sentence—along with other information like the plea, verdict and factual findings—forms a judgment of conviction once signed by the judge and entered on the journal by the court clerk. *See* Ohio Crim. R. 32(C). As noted above, a judgment of conviction is reviewable under *Shepard*.

Adkins also argues that the definite post-release control term contained in the journal entry does not indicate that he was "necessarily" convicted of a crime of violence because Ohio defines violent offenses more broadly than qualifying crimes of violence at the federal level. This Court, however, has concluded that Ohio aggravated robbery and kidnapping convictions constitute violent felonies. *United States v. Sanders*, 470 F.3d 616, 22 (6th Cir. 2006) ("affirm[ing] the district court's conclusion that aggravated robbery under Ohio law constitutes a violent felony"); *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) ("a [kidnapping] crime committed under Ohio Rev. Code Ann. § 2905.01, whether by force, threat of force, or deception, categorically qualifies as a 'violent felony' under § 924(e)(2)(B)(ii)").

For these reasons, the journal entry reflecting Adkins's attempted criminal gang activity conviction is a "comparable judicial record" under *Shepard* and, based on the state court's sentence of three years of post-release control, Adkins necessarily pleaded guilty to a crime of violence. A base offense level of 20 was proper.

### 3. WHETHER THE COURT IMPROPERLY ASSIGNED A CRIMINAL HISTORY POINT FOR AN UNDOCUMENTED JUVENILE ACCIDENT

This Court "review[s] a district court's factual findings concerning a defendant's criminal history category, which must be based on a preponderance of the evidence, under the clearly erroneous standard of review." *United States v. Wheaton*, 517 F.3d 350, 368 (6th Cir. 2008).

In applying a criminal history category of III, the district court included one point for Adkins's juvenile delinquent adjudication for carrying a concealed weapon. Adkins objected, claiming that he was never found guilty of the offense. Though no specific record of the incident was provided, Defense counsel alleged at the sentencing that Adkins "was bound over as an adult, and the case was terminated . . . at some point, it was dismissed as an adult. [The record] doesn't reflect that."

The record shows that the district court relied on sufficient evidence to assign a criminal history point for Adkins's juvenile delinquent adjudication. The U.S. Probation Officer explained that, although his office "[does not] get hard copies of juvenile records . . . because of the nature [of such records]," a report by the State of Ohio Adult Parole Authority "did reflect the [adjudication]." The Parole Authority's report showed "that [Adkins] was adjudicated delinquent and placed on probation, with the Ohio Department of Human Services, with the suspended commitment." *Id*. The government also noted that the record reflected that Adkins's probation terminated on May 31, 2008, "due to a bind over, and the next state offense . . . for aggravated robbery, two counts, kidnapping, carrying concealed weapon, tampering with evidence, having [a] weapon under disability, possession of drugs, and criminal gang activity, along with tampering with evidence." *Id*.

Notably, when the district court asked Defense counsel at the sentencing hearing whether the record "show[s] a finding of delinquency or an adjudication," defense counsel admitted "that's what the record indicates at this point" and did not produce any evidence to support Adkins's denial of the adjudication. In overruling the objection, the court acknowledged that "generally the records [of the juvenile adjudication] are not what you would hope," as they raise questions of hearsay. The court, however, correctly noted that "the hearsay rules don't strictly apply in sentencing." And, although "it would have been much better if [the court] would have seen the actual order of adjudication in the juvenile case" the court relied on the State Parole Authority's report "as to what some other record shows." In the absence of any documentation to the contrary, the court found this to be sufficient evidence of the adjudication.

Adkins, however, insists that the government was required to provide additional support for the adjudication to rebut his assertion that the adjudication was dismissed. We disagree. "'A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce *some evidence* that calls the reliability or correctness of the alleged facts into question.'" *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (emphasis added) (quoting *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994)). If a defendant meets this initial burden of production, "the government must then convince the court that the PSR's facts are actually true." *Id.* (emphasis added) (quoting *Mustread*, 42 F.3d at 1102). The defendant, however, "'gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR.'" *Id.* (quoting *Mustread*, 42 F.3d at 1102). Aside from bald assertions, Adkins failed to produce any evidence regarding the alleged absence of the juvenile delinquent adjudication and thus did not carry his burden of producing evidence that calls the adjudication into question. Nor does Adkins provide documentation casting doubt on the validity of the State Parole Authority's report. Accordingly, the district court properly relied on the report when assigning one criminal history point for Adkins's juvenile delinquent adjudication.

### 4. ADKINS'S PERSONAL HISTORY FACTORS

Last, Adkins argues that his sentence was procedurally and substantively unreasonable because the district court failed to adequately account for his personal history when considering the factors set forth in 18 U.S.C. § 3553(a).

The Court affords guidelines-range sentences a "rebuttable presumption of reasonableness," thereby placing the onus on the defendant to demonstrate otherwise. *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007). This "deferential abuse of discretion standard" has both a procedural and a substantive component. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008).

A district court abuses its sentencing discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines

range, treating the Guidelines as mandatory, failing to consider the 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

A reviewing court also considers the substantive reasonableness of a sentence, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*; *Jeross*, 521 F.3d at 569. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). A district court may place great weight on one factor if such weight is warranted under the facts of the case. *United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012). Additionally, this Court has recognized that the manner in which a district court chooses to balance the applicable sentencing factors is beyond the scope of the Court's review. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008); *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). "[W]here a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Thomas*, 2011 WL 4014345 at *2 (internal quotation marks and citation omitted).

Adkins argues that his sentence is unreasonable because of the relative weight the district court gave to applicable § 3553(a) factors. This claim is beyond the scope of our review. *Sexton*, 512 F.3d at 332; *Ely*, 468 F.3d at 404. While Adkins contends that the district court "gravely understate[d] the physical abuse . . . [he] suffered," this claim is merely a request to "balance the factors *di[f]ferently* than the district court did." *Ely*, 468 F.3d at 404. As this Court has explained, the scope of appellate review includes examining "whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *Id*. *See also United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008) (noting that "appellate courts must respect

the role of district courts and stop substituting their judgment for that of those courts on the front line").

Adkins's claim that the district court should have given his family circumstances more weight is unpersuasive. The district court noted Adkins's "extremely troubled family circumstances," including the absence of his father and his mother's drug addiction. The court further acknowledged that, although Adkins's mother appeared to have overcome her drug addiction, "it obviously had an impact upon him," all of which, the court found, "suggest[ed] that the Defendant could be sufficiently punished by a somewhat lesser sentence." But the court also noted several factors that outweighed these circumstances, including Adkins's "drug dependency," "involve[ment] in a number of violent instances," lack of "work history" and "drop[ping] out of school." The court found Adkins's situation "somewhat more aggravating [than other felons in possession] because of the use of the weapon" and because his "involve[ment] with the criminal justice system quite a few times [was] . . . in some ways . . . more than that typically [seen] by a Criminal History Category 3." These statements show that the court properly considered the applicable § 3553(a) factors in determining Adkins's minimum Guidelines sentence.

Last, Adkins's claim that the district court impermissibly held his prior gunshot injury against him is likewise misplaced. The court's comments that Adkins had "been shot in the leg" and had "a number of cases in the past where [he had] been involved with firearms," as well as its comments about Adkins's drug dependency, are relevant when assessing Adkins's association with drugs, violence, and recidivism. The district court had an interest in seeing that Adkins's sentence reflected the seriousness of the offense; in affording adequate deterrence; and in protecting the public from further crimes by Adkins. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). The district court did not commit error by considering Adkins's gunshot wound in the context of his background, history, and previous acts. After properly examining all the § 3553(a) factors, the court acted within its discretion by placing more "weight on one factor" because the particular facts in this case warranted doing so. *Zobel*, 696 F.3d at 571–72.

For the above reasons, the district court demonstrated that it adequately considered Adkins's history and characteristics and his "troubled family circumstance[s]." Adkins's displeasure with the manner in which the district court balanced the § 3553(a) factors is simply beyond the scope of our review and insufficient to defeat the presumption of reasonableness afforded to his minimum sentence.

## IV. CONCLUSION

The district court did not err in sentencing Adkins to 46 months of incarceration. First, the court properly applied an enhancement for Adkins's use of ammunition in connection with another felony offense. Second, the district court calculated the correct base offense level given Adkins's prior conviction for a violent felony. Third, the court correctly assigned a criminal history point for a prior juvenile conviction. Last, the district court fully considered Adkins's personal history and characteristics before imposing a sentence. Accordingly, we AFFIRM the sentence of the district court.