NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0242n.06

No. 24-5443

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 12, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TERRANCE LAMONT HINES, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

BOGGS, Circuit Judge. Terrance Hines appeals his convictions and sentence for federal drug-trafficking and weapons-possession charges. In 2020, a Tennessee resident died after overdosing on fentanyl that Hines distributed. Hines was eventually arrested, tried, convicted, and sentenced to life plus sixty months of imprisonment. On appeal, Hines argues that the government presented insufficient evidence of his guilt at trial, and that the district court gave him a substantively unreasonable sentence. For the following reasons, we affirm Hines's convictions and sentence.

I

Beginning in September 2020, Defendant-Appellant Terrance Hines sold wholesale quantities of illegal drugs to a reseller named Robin Hutchins in Kingsport, Tennessee. By December 2020, Hines was Hutchins's sole supplier. Hutchins, in turn, supplied drugs to three or four individuals, including Adam Presnell. And on the morning of December 3, 2020, Presnell

sold heroin laced with fentanyl to two users, Shaina Lanford and Terri Garber. Later that morning, Terri Garber's husband found her unresponsive body in their home's bathroom. Paramedics soon arrived, determined that Garber had overdosed on opioids, and unsuccessfully tried to resuscitate her. Although Garber was later taken to a hospital, she never regained a pulse.

After Garber's death, forensic pathologist Andrea Orvik examined Garber's body and determined that the cause of death was fentanyl and oxycodone intoxication. Notably, Garber's blood contained more than four times the recognized lethal level of fentanyl. During trial, Dr. Orvik testified that, based on her medical expertise, this fentanyl dosage was sufficient to kill Garber, even if Garber had not also consumed oxycodone.

The Tennessee Bureau of Investigation ("TBI") subsequently traced the fatal dose of fentanyl up the supply chain, and eventually back to Hines. In gathering evidence, the TBI used Hutchins as a cooperator, instructing her to complete a series of controlled drug buys from Hines. Over three controlled buys in June and July 2021, Hines collectively sold about two-and-a-half ounces of fentanyl to Hutchins. The TBI later conducted searches of Hines's home, recording studio, and vehicle, seizing two cell phones, two firearms, $3,100 in cash, plastic bags containing drug residue, and a mylar bag containing a known cutting agent for drugs. The TBI also recovered ninety-three grams of fentanyl (with an estimated street value of more than $11,000) from Hines's recording studio.

In 2022, a grand jury indicted Hines on eight charges involving drug trafficking and weapons possession. And at trial in July 2023, a jury convicted him on all charges. After the jury

delivered its verdict, Hines made a timely motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), which the district court denied.

Prior to Hines's sentencing, the district court calculated the advisory Sentencing Guidelines range as 360 months to life imprisonment, based on a total offense level of 38 and a criminal history category of VI. After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Hines to an aggregate term of life plus sixty months of imprisonment. This appeal then followed.

## II

*Sufficiency of the Evidence.* On appeal, Hines first argues that the jury at his trial lacked sufficient evidence to convict him on three of his eight charged offenses. Hines contends that the district court therefore erred by denying his post-verdict motion for judgment of acquittal, under Federal Rule of Criminal Procedure 29(c). Regrettably, Hines has waived his arguments by not specifically raising them at the district court when presented with the opportunity.

Rule 29 provides that, on a defendant's timely motion, the district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Typically, we review *de novo* the district court's denial of a Rule 29 motion. *See United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). However, where defendants fail to make any Rule 29 motion at trial, "[we] will not consider challenges to the sufficiency of the evidence" on appeal. *United States v. Chance*, 306 F.3d 356, 368 (6th Cir. 2002). And if a movant cites specific grounds for a Rule 29 motion, then only those specific grounds are preserved for appeal; "all grounds not specified in the motion are waived." *Id.* at 369 (citing *United States v. Dandy*, 998 F.2d 1344, 1356 (6th Cir. 1993)). Once a Rule 29 claim is

waived, it will not be considered on appeal. *See United States v. Osborne*, 886 F.3d 604, 618 (6th Cir. 2018).

At the district court, Hines made a Rule 29 motion on specific grounds. Accordingly, he preserved for appeal only the two specific challenges raised in that motion. These were: (1) that "the jury should have [only] convicted the Defendant for a conspiracy to distribute between 40 [and] 400 grams of fentanyl," rather than a conspiracy to distribute 400 or more grams; and (2) that Hines should not receive a "death enhancement" to his sentence for causing the death of Terri Garber, because the evidence did not show that he (and not some other dealer) was the source of the fatal dose of fentanyl. Had Hines renewed either of those two challenges on appeal, we would review the arguments *de novo*.

But Hines does not make either of his previous arguments on appeal. Instead, he brings two new, wholly distinct, sufficiency-of-the-evidence claims. First, Hines argues the evidence at his trial failed to prove *any* conspiracy to distribute fentanyl. Appellant's Br. at 14. This is in sharp contrast to Hines's original Rule 29 motion, in which he disputed only the scale of the alleged conspiracy, while fully conceding that "the jury should have convicted the Defendant for a [smaller] conspiracy[.]" And second, although Hines's original Rule 29 motion focused only on his drug-trafficking offenses, he now (for the first time) challenges his two weapons-possession convictions arising under the Armed Career Criminal Act ("ACCA"). Appellant's Br. at 18. But Hines never raised these arguments in his Rule 29 motion at the district court, and the district court had no chance to rule on them. *See Dandy*, 998 F.2d at 1357. Unfortunately, those claims are now waived, and we lack the ability to review—let alone reverse—the district court's ruling on them.

*Substantive Reasonableness.* Hines also contends that his sentence is substantively unreasonable. Appellant's Br. at 20. In sentencing Hines, the district court calculated the

appropriate Sentencing Guidelines range as 360 months to life imprisonment. For conspiracy to distribute at least 400 grams of fentanyl, resulting in the death of Terri Garber, the district court sentenced Hines to life imprisonment, the high end of the Guidelines range. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. The district court also imposed a thirty-year sentence, to run concurrently with the life sentence, for Hines's remaining drug-trafficking offenses, and a fifteen-year sentence for his ACCA violations. Finally, the district court sentenced Hines to a mandatory-minimum five-year sentence for possessing a firearm in furtherance of drug trafficking, under 18 U.S.C § 924(c). By statute, this sentence must run consecutively to Hines's drug-trafficking life sentence. *See* 18 U.S.C. § 924(c)(1)(A)(i).

By making a substantive reasonableness claim, Hines alleges the district court imposed too long a sentence—in other words, that the district court "placed too much weight on some of the § 3553(a) factors and too little on others[.]" *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). In reviewing this claim, we generally defer to the district court, which has "considerable discretion" over the sentencing process. *United States v. Overmeyer*, 663 F.3d 862, 864 (6th Cir. 2011). Even where a district court judge's sentence varies upwards or downwards from the advisory Guidelines range, we overturn her decision only if it is "unreasonable." *Ibid.* But where the sentence falls within the Guidelines range, we accord even stronger deference, presuming the sentence to be reasonable unless the defendant can show otherwise. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Here, Hines has not met that burden. He essentially argues that the district court placed too much weight on one factor—Terri Garber's accidental death—in imposing a top-of-Guidelines sentence, and that either twenty-five years of imprisonment (the mandatory minimum) or thirty-five years (the bottom of the Guidelines range) would have sufficiently satisfied the § 3553(a)

factors. Appellant's Br. at 24–25. But in doing so, Hines asks us to reweigh the § 3553(a) factors in the place of the district court, which we may not do unless that court's decision was unreasonable. *See United States v. Adkins*, 729 F.3d 559, 571–72 (6th Cir. 2013). And in each instance, the district court's assessment of the sentencing factors appears—at a minimum—reasonable.

Even before delivering the sentence, the district court stated that it found cases involving a potential life sentence "especially difficult," and that it had imposed such a sentence "in only a handful of cases" over the course of two decades. The court then engaged in a thorough discussion of each of the 18 U.S.C. § 3553(a) factors, explaining why they made this case so "compelling" as to warrant such a weighty sentence. First, the court noted that fentanyl dealing was an extremely serious offense, given the drug's growing death toll across the country, and within the state of Tennessee in particular. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). The court stressed that Hines's commission of fentanyl trafficking was of especially terrible severity, because it both directly resulted in the loss of Terri Garber's life, and involved possession of a firearm. The court pointed out Hines's extensive criminal history (which included prior drug-trafficking offenses), his seeming lack of remorse, and the need to promote respect for the law and protect the public from the dangers of fentanyl. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C). Finally, the court reasonably concluded that these factors, paired with the pressing need for general deterrence against other would-be dealers distributing fentanyl, all weighed in favor of a life sentence. *See* 18 U.S.C. § 3553(a)(2)(B).

In fact, the district court's sentence seems especially reasonable, as both Congress and the Sentencing Commission have recognized the severity of drug crimes involving the death of a victim. In a case where death results from drug dealing, Congress expressly gave sentencing courts

the discretion to impose a life sentence. *See* 21 U.S.C. § 841(b)(1)(A). The Sentencing Commission has likewise prescribed a heightened base offense level of 38 for individuals convicted of fatal drug-trafficking offenses, and even counseled that an *above*-Guidelines sentence may be appropriate in cases where a victim's death results. *See* U.S.S.G. §§ 2D1.1(a)(2), 5K2.1. When "there is a confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge, that 'double determination significantly increases the likelihood that the sentence is a reasonable one.'" *Vonner*, 516 F.3d at 389 (quoting *Rita v. United States*, 551 U.S. 338, 347 (2007)). Given the grave nature of his convictions, Hines has failed to show that the Sentencing Commission and district court's confluence of views on lethal drug trafficking have resulted in a substantively unreasonable sentence.

\* \* \*

We AFFIRM.