**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GARY DANIEL BARTLEY,

    Defendant-Appellant.

No. 14-1300

(D.C. No. 1:93-CR-00061-PAB-1)
(D. Colo.)

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GARY BARTLEY,

    Defendant-Appellant,

No. 14-1305

(D.C. No. 1:13-CR-00438-PAB-1
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **BALDOCK** and **EBEL**, Circuit Judges.

Defendant Gary Bartley pled guilty to one count of bank robbery and

admitted to violating the terms of his supervised release by committing the

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

robbery. He appeals his sentences in both cases, which were imposed at the same hearing. Bartley challenges the procedural reasonableness of his bank robbery sentence, arguing the district court erred in applying a career offender enhancement. Bartley also challenges the substantive reasonableness of his supervised release sentence on the grounds that the district court did not properly consider his age in determining whether the sentence should be served consecutively to or concurrently with his bank robbery sentence.

# I

## *Factual background*

On November 19, 1991, Gary Bartley entered a bank in Galveston, Texas, and committed an armed robbery. Two weeks later, on December 4, 1991, Bartley entered a bank in Denver, Colorado, and again committed an armed robbery. For the Texas robbery, Bartley was charged with aggravated robbery in Texas state court and pled guilty on January 28, 1993. He was sentenced that same day to a term of 25 years in state prison. In Colorado, Bartley was indicted in federal court on two counts of bank robbery[1] under 18 U.S.C. §§ 2113(a) and 2113(d) and one count of using a firearm in the commission of a violent crime under 18 U.S.C. § 924(c)(1). He pled guilty to one count of bank robbery and one count of using a firearm to commit a violent crime. On January 20, 1994, Bartley

---

[1] Bartley also robbed a bank in Denver on November 25, 1991, but that count was dismissed as a part of his plea agreement.

2

was sentenced on the federal convictions to 248 months' imprisonment, to be followed by five years of supervised release.[2]

The relationship between the service of Bartley's state and federal sentences becomes significant in determining whether Bartley qualified as a career offender when he was sentenced in 2014 after his most recent bank robbery conviction. Records regarding the Texas conviction and sentencing are sparse. However, the federal presentence report from Bartley's 1993 conviction states that after being sentenced in Texas, Bartley was returned to Colorado state prison to serve time for an unrelated offense. Other records indicate that he was eventually moved to federal prison due to the December 4, 1991, Colorado bank robbery offense discussed above. Bartley entered federal prison in April of 1995 and remained there until the completion of his federal sentence. While Bartley was still in federal custody, the Texas Department of Criminal Justice released Bartley on parole on August 31, 2005, and issued a "release to detainer" to release Bartley into federal custody. Bartley signed the Texas parole documents in November 2005, presumably while still residing in federal prison. From the record presented, it appears that while Bartley was in federal custody Texas did not file a detainer with federal authorities.

---

[2] Bartley was sentenced to 188 months' imprisonment on the robbery count and 60 months on the firearm count, to be served consecutively. He was sentenced to five years of supervised release on the robbery count and three years supervised release on the firearm count, to be served concurrently.

3

In October 2013, two months after being released from federal prison to serve a term of supervised release, Bartley again robbed a bank in Denver. The subsequent 2014 sentencing for this bank robbery and for the related violation of supervised release are at issue in this appeal.

*Procedural history*

Bartley was indicted on one count of bank robbery under 18 U.S.C. § 2113(a) on October 21, 2013. He pled guilty on March 17, 2014. Bartley's probation officer alleged that the bank robbery was also a violation of the conditions of Bartley's supervised release and sought revocation of Bartley's supervised release. Bartley's sentencing for bank robbery and his supervised release violation were addressed at the same hearing.

Bartley filed an objection to the presentence report for his robbery conviction, arguing that he should not be characterized as a career offender. The presentence report stated that Bartley met the criteria for the career offender enhancement under § 4B1.1 of the United States Sentencing Guidelines because Bartley was (a) at least 18 years old at the time of the instant offense; (b) the offense was a crime of violence; and (c) Bartley had at least two prior felony convictions for crimes of violence (the Texas and federal bank robbery convictions) for which he was serving a sentence for at least part of the fifteen years prior to his 2013 bank robbery. Bartley argued that his Texas conviction should not receive criminal history points or count as a predicate offense for the

4

career offender enhancement because the government could not prove that the Texas conviction "resulted in" Bartley's imprisonment within fifteen years of the instant offense as required by U.S.S.G. § 4A1.2(e). Bartley contended that the phrase "resulted in" in U.S.S.G. § 4A1.2(e) required a conviction to be a but-for cause of imprisonment, and as Texas did not lodge a detainer against Bartley while he was in federal custody, there was no evidence that Bartley was incarcerated as a result of the Texas conviction during the fifteen years prior to the 2013 robbery.[3]

Bartley also filed a motion for a variant sentence in his bank robbery case. Bartley argued that a variant sentence was warranted because (1) the bank robbery did not involve a weapon or threats of harm, (2) he took immediate responsibility for the crime, and (3) he otherwise had difficulty adjusting to life outside of prison after being institutionalized for much of his childhood and adult life. He also argued that the career offender enhancements were unduly harsh and frequently have been disregarded by other courts.

The government opposed Bartley's objections to the PSR. It argued that the State of Texas's decision to parole Bartley in 2005 indicated that the state believed that Bartley was serving his state sentence for aggravated robbery concurrently with his federal sentence. The government argued that the fact that

---

[3] Bartley also argued in his objections to the PSR that the Texas conviction was not a crime of violence, but he has abandoned that argument on appeal.

Texas did not file a detainer against Bartley while he was serving his federal sentence was not determinative of whether Bartley was also serving his Texas sentence.

The district court heard oral arguments on Bartley's objections to the PSR at the consolidated hearing. Bartley argued that the failure of Texas authorities to file a detainer against Bartley meant that if his federal sentence had been vacated, he could have been set free and not returned to Texas authorities. Bartley argued that this lack of control by Texas meant that he was not incarcerated "as a result" of his Texas conviction. The district court disagreed, stating that "it seems like Texas knows where he is, Texas says that now he can be paroled, and 'paroled' seems to presume the service of a sentence." ROA (14-1305), Vol. V at 9. Thus, despite acknowledging that it is difficult to tell "exactly . . . what was going on in between the various state and federal charges back in the early '90s," the district court concluded that prior to his parole, Bartley was serving both his state and federal sentences while imprisoned by federal authorities and that he was imprisoned as a result of both convictions. Id. at 9-10, 21-23.

The district court then denied Bartley's motion for a variant sentence and sentenced Bartley to 151 months' imprisonment on the robbery conviction, the minimum sentence recommended under the Guidelines. The district court concluded that a significantly shorter sentence was not warranted because Bartley was the "poster child for the career offender guideline" because he routinely

6

committed bank robberies upon release from prison.  Id. at 48.  The court noted Bartley's age at the time of the instant robbery (55) and stated that Bartley was not "ratcheting down [his] criminal behavior" as he aged and that the court "was not convinced that [Bartley] won't have that same propensity when he's even older."  Id. at 51.  Nonetheless, the court concluded that Bartley's age counseled against its imprisoning Bartley "for as long as possible."  Id. at 52.

The district court then took up revocation of Bartley's supervised release and sentencing for that violation.  Bartley argued that any sentence for the violation should be concurrent to the bank robbery sentence, citing his likely age after service of his 151-month sentence.  The district court stated that it was taking the factors listed in 18 U.S.C. § 3553(a) into account, again noted Bartley's age, but nonetheless concluded that "[i]t's hard to imagine a more outrageous violation of the terms and conditions of supervised release than to immediately go out and commit the exact same crime."  Id. at 63.  The court concluded it was "completely appropriate" to sentence Bartley to a consecutive 36-month term for his violation of supervised release.  Id.

## II

Bartley first challenges the procedural reasonableness of the district court's application of a career offender enhancement to his robbery sentence.

## A

We review procedural reasonableness challenges under an abuse-of-

discretion standard, "under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error." United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012).

**B**

The Sentencing Guidelines provide for sentencing enhancements if a defendant is a career offender. The Guidelines define a career offender as:

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The career criminal enhancement typically increases a defendant's offense level and the resulting recommended sentence range under the Guidelines. U.S.S.G. § 4B1.1(b). In this case, when this enhancement is applied Bartley's recommended sentence range increased from 37–46 months to 151–188 months.

Both parties agree on appeal that the first two parts of § 4B1.1(a) are satisfied in this case. However, Bartley challenges whether he has two qualifying prior felony convictions for purposes of § 4B1.1(a)(3). That section defines "two prior felony convictions" by reference to § 4A1.1 and necessarily § 4A1.2, as the two sections "must be read together" pursuant to the Guidelines's comments. Under § 4A1.2(e)(1), a conviction only "counts" under the Sentencing Guidelines

8

if it involves "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense" or "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that *resulted in* the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1) (emphasis added). Both convictions at issue in this case—Bartley's 1993 Texas conviction and 1994 federal conviction—can only fall under the second prong of that analysis, as both sentences were indisputably imposed more than fifteen years prior to the instant offense.

Bartley argues that the phrase "resulted in" requires that a conviction be the "but for" cause of a defendant's incarceration and that Bartley's Texas conviction would not qualify as a "but for" cause. Bartley bases his argument on the Supreme Court's analysis of similar language in Burrage v. United States, 134 S.Ct. 881, 886-87 (2014). In Burrage, the Supreme Court analyzed the criminal statute that mandates increased sentences for drug distributors when a death "results from" the use of the distributed drug. 134 S. Ct. 881, 887 (2014) (citing 21 U.S.C. § 841(b)(1)(A)-(C)). The Court concluded that the language "results from" requires that the drug in question be a "but for" cause of the victim's death. Id. at 887-88. The Court noted that this was the "ordinary meaning" of the phrase and that other phrases, including "results in," had been interpreted the same way in both civil and criminal statutes. Id. at 888-89.

9

Although Bartley is correct that the Supreme Court appeared to speak in broad terms in Burrage, a careful reading of the case indicates that the Court's statements come with several caveats. The Court stated that the meaning of language such as "results from" or "results in" requiring but-for causation was "one of the traditional background principles against which Congress legislate[s]," but noted that there may be "textual or contextual indication" that strict but-for causation was not intended. 134 S. Ct. at 888-89 (internal punctuation omitted). The Court also pointed out that there are common-law exceptions to but-for causality—including that "multiple sufficient causes [may] independently, but concurrently, produce a result." Id. at 890. Moreover, the Court indicated that legal causation cannot be a matter of guesswork when contained in a criminal statute which requires its proof beyond a reasonable doubt. Id. at 892 ("Uncertainty of that kind cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials or with the need to express criminal laws in terms ordinary persons can comprehend.").

By contrast, this case involves the Sentencing Guidelines, which are typically applied by probation officers and the sentencing judge after a conviction has already been achieved. The Guidelines themselves are also rich with text and context that indicate how criminal history points should be calculated and how the career offender enhancement should be applied. See U.S.S.G. §§ 4B1.1, 4B1.2, 4A1.1, 4A1.2. In particular, the Guidelines describe when prior sentences must

10

be counted separately and when they may be consolidated in calculating a defendant's prior criminal history, with separate convictions also counting for the career offender enhancement. Section 4A1.2(a) of the Sentencing Guidelines states that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest" and "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." Whether the sentences are served concurrently is not a factor in calculating whether the sentences are to be consolidated for criminal history purposes. See United States v. Jones, 898 F.2d 1461, 1463 (10th Cir. 1990). Nor, as the district noted, are concurrent sentences unusual. Concurrent sentences in unrelated cases imposed by a state and a federal court are a common occurrence and not a special exception with special procedural requirements as Bartley seems to argue. In short, the Sentencing Guidelines provide a detailed process for calculating a defendant's criminal history and total number of convictions for career offender enhancement and there is no indication its drafters thought that a particular conviction must be the sole but-for cause of a defendant's imprisonment before it can be counted as a prior conviction.

By all appearances, Bartley's case fits squarely into the Guidelines' requirements for counting sentences separately because his Texas and federal

11

offenses appear to have been separated by an intervening arrest, but regardless, the offenses were not contained in the same charging instrument and the sentences were not imposed on the same day. This case is somewhat challenging because the record is deficient as to how these sentences were ordered to be served—we know that Bartley was convicted and sentenced in Texas first, but then was sent to federal prison after he was sentenced on the federal bank robbery charges. It is fair to infer from that sequence of events, and the fact that Bartley remained in federal prison for nearly 20 years, that Texas voluntarily waived its primary custody of Bartley to federal authorities. See Hall v. Looney, 256 F.2d 59, 60 (10th Cir. 1958); Wall v. Hudspeth, 108 F.2d 865, 867 (10th Cir. 1940) ("Public officials are presumed to do their duty, not to act in an unauthorized manner. . . . It must be presumed that the state voluntarily surrendered him in some manner."). See also Weekes v. Fleming, 301 F.3d 1175, 1181 (10th Cir. 2002) (concluding from indirect evidence in the record of state and federal prison officials' actions that "Idaho indeed relinquished primary custody of Mr. Weekes to the United States").

We do not have explicit information in the record that Texas authorities agreed or ordered that Bartley would serve his state sentence concurrently with his federal sentence, but the parole paperwork is strong evidence that Texas did just that. Bartley argues that the absence of a detainer means that he could have been released from federal prison without the knowledge or hindrance of Texas

12

authorities, and that therefore his Texas conviction was not a but-for cause of his imprisonment. However, Bartley's argument would only be compelling if his federal conviction were overturned and he was *actually* set free. In stark contrast to this hypothetical is the fact that Texas knew where Bartley was from the time of his federal sentencing to the time it released him on parole from his Texas sentence. Under these facts, we can assume that if Bartley had been released from federal prison prior to 2005, the state of Texas would have exercised its continued jurisdiction over Bartley to ensure that he completed his state sentence. See Hernandez v. U.S. Atty. Gen., 689 F.2d 915, 919 (10th Cir. 1982) ("The law of comity is such that the two sovereigns may decide between themselves which shall have custody of a convicted prisoner; however, the sovereign having prior jurisdiction need not waive its right to custody.").

In other cases, federal courts have concluded that the failure to file a detainer does not mean that a sovereign has waived its jurisdiction over a prisoner, at least not without evidence of gross negligence. See, e.g., Piper v. Estelle, 485 F.2d 245, 246 (5th Cir. 1973) ("In cases based upon the principles of [Shields v. Beto, 370 F.2d 1003 (5th Cir. 1963)] . . . the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction."). In this case, Texas officials might have assumed that Bartley would

13

remain in federal custody past his Texas parole release date, or they may have failed to file a detainer due to simple negligence. Regardless, the failure to file a detainer did not jeopardize the state's interests. The state clearly considered Bartley imprisoned on both his state and federal convictions until it issued its parole certificate in 2005.

In short, there is no indication in our caselaw that a detainer was required for Texas to maintain its secondary jurisdiction over Bartley, and there is no indication that Texas ever lost its right to custody. It strains credulity to argue that Bartley's imprisonment was not the result of both his state and federal convictions simply because Texas did not file a detainer against Bartley. Were Bartley nearing the completion of his federal sentence, Texas could have filed its detainer immediately prior to his release and regained physical custody of Bartley. We conclude on the record presented that Bartley served his state and federal sentences for bank robbery concurrently, and both "resulted in" his imprisonment within the past 15 years. Thus, we affirm the district court's application of the career offender enhancement and Bartley's resulting sentence.

## III

Bartley next challenges the substantive reasonableness of the sentence imposed after the revocation of his supervised release, arguing that the district court abused its discretion when considering Bartley's age at sentencing.

14

**A**

We review "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007). "Under a deferential abuse-of-discretion standard, we deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." Gantt, 679 F.3d at 1249 (internal quotation marks omitted). When reviewing substantive reasonableness, an appellate court should consider "the totality of the circumstances, including the extent of any variance from the Guidelines range" and may apply a presumption of reasonableness to sentences within the Sentencing Guidelines. Gall, 552 U.S. at 51.

**B**

Under 18 U.S.C. § 3583(e)(3), a court may revoke a term of supervised release and require the defendant to serve time in prison, subject to certain statutory limits. Bartley argues on appeal that the sentence imposed following the revocation of his supervised release was substantively unreasonable because the district court did not appropriately consider Bartley's age when released from his bank robbery sentence. In particular, Bartley argues that the district court's balancing of the sentencing factors laid out in 18 U.S.C. § 3553(a) was "manifestly unreasonable" because the court cited Bartley's age as the main reason for giving him a sentence at the bottom of the recommended range on the robbery count, but then in seeming contradiction imposed a consecutive sentence

15

for his violation of the terms of his supervised release.

At the outset, it should be noted that the Guidelines policy statements advise that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release." U.S.S.G. § 7B1.3(f). Generally, however, "[i]n imposing a sentence following revocation of supervised release, a district court is required to consider both Chapter 7's policy statements, as well as a number of the factors provided in 18 U.S.C. § 3553(a)." United States v. Cordova, 461 F.3d 1184, 1188 (10th Cir. 2006). An appellate court "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo" and instead must grant the district court significant deference. United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008) (internal quotation marks omitted). "[I]n deciding whether to vary [a defendant's sentence], pursuant to § 3553(a), . . . district courts have broad discretion to consider individual characteristics like age." United States v. Sells, 541 F.3d 1227, 1237-38 (10th Cir. 2008) (citing Gall, 552 U.S. 38, 57 (2007)). "That such a ground for a variance is available certainly does not, however, mean it is compelled." Id.

16

Bartley does not cite to any caselaw that states that a district court must give the defendant's age the same weight in two different but related sentencings. Nor is such a case likely to exist, given that district courts consider the § 3553(a) factors separately for each sentence; it is perfectly reasonable for the district court to balance those factors differently in sentencing for two separate offenses, even for the same defendant. It is even more reasonable that a court's balancing of factors would differ when imposing a sentence for violation of supervised release when compared to imposing a sentence for a criminal conviction. Our precedent and the Guidelines specifically require consideration of additional factors when sentencing for violation of supervised release. See Cordova, 461 F.3d at 1188 (noting a district court must consider both Chapter 7 of the Guidelines and the § 3553(a) factors when revoking supervised release).

When sentencing Bartley on the robbery conviction, the district court gave some weight to the fact that Bartley had moved away from using weapons or explicit threats of violence and ultimately concluded that Bartley's age justified a sentence at the low end of the Guidelines range (although not a variant sentence as requested). The district court noted that Bartley had again raised an age argument in favor of a concurrent sentence for his revocation of supervised release, but ultimately concluded that a consecutive sentence was warranted because the violation of his supervised release was "outrageous" and involved nearly the same conduct as his original offense. ROA (14-1305), Vol. V at 63.

17

Such an analysis—and the court's conclusions on each sentence—is totally logical.

Moreover, Bartley fails to compellingly argue that the district court *actually* weighed Bartley's age differently when imposing the two sentences. The sentencings were completed at the same time, and it is difficult to believe that the district court was not also contemplating the additional sentence it would impose for Bartley's violation of supervised release when it first imposed the robbery sentence. The district court's statements about Bartley's age were also equivocal; the court noted that Bartley was at a relatively advanced age when he committed the instant offense and that there was no indication he would stop committing bank robberies when released.[4] The court stated that Bartley's age was the main reason it chose not to impose the maximum possible sentence, but the court's leniency on the bank robbery sentence could have easily been influenced by the fact that subsequent sentencing on the supervised release violation would follow. In short, there is little or no support for the idea that the district court was "manifestly unreasonable" in its consideration of Bartley's age at his sentencings. Thus, the district court did not abuse its discretion by imposing a consecutive sentence for Bartley's violation of the terms of his supervised release.

---

[4] Similarly, in Sells, the court noted that a defendant's commission of a similar offense while on supervised release at age 59 "casts significant doubt on Sells's *sub silentio* assertion that a shorter sentence is sufficient to deter future criminal acts on his part because he is unlikely to commit additional crimes due to his age." 541 F.3d at 1238 (10th Cir. 2008).

18

## IV

For the reasons set forth above, we AFFIRM Bartley's sentences for bank robbery and for violating the terms of his supervised release.

Entered for the Court

Mary Beck Briscoe
Chief Judge