RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

> No. 23-3304

*v.*

NASHAUN DRAKE,

*Defendant-Appellant.*

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cr-00519-1—Donald C. Nugent, District Judge.

Decided and Filed:  January 28, 2025

Before:  SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge.  Nashaun Drake pleaded guilty to several drug offenses.  At Drake's sentencing, the district court treated him as a "career offender" based, in part, on a prior marijuana conviction.  The court sentenced Drake to a within-guidelines sentence of 200 months' imprisonment.  Drake now argues that his prior marijuana conviction did not qualify as the type of drug offense that can trigger the career-offender sentencing enhancement.  And he argues that his 200-month sentence was unreasonable.  But our binding precedent requires us to reject his

first claim, and our deferential standard of review requires us to reject his second one.  We affirm.

In the spring of 2021, the police department in Euclid, Ohio, began to suspect Drake of drug trafficking.  On June 11, 2021, Euclid officers executed a search warrant at his apartment.  They discovered 322.33 grams of fentanyl, 16.22 grams of cocaine, .6 grams of methamphetamine, and a variety of tools commonly used in the drug-trafficking trade.

The government charged Drake with five counts of possessing illegal drugs with the intent to distribute them, in violation of 21 U.S.C. § 841(a)(1).  Drake pleaded guilty to all five counts.

At sentencing, the district court concluded that Drake qualified as a "career offender" under § 4B1.1 of the Sentencing Guidelines.  This conclusion produced a guidelines range of 188 to 235 months' imprisonment.  The court sentenced Drake to a 200-month prison term.

On appeal, Drake argues that the district court should not have applied the career-offender enhancement and that it imposed a substantively unreasonable sentence.  He is twice mistaken.

*Career-Offender Enhancement*.  Section 4B1.1 directs district courts to treat a defendant as a "career offender" if (among other requirements) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  Section 4B1.2 then defines "controlled substance offense" to include any federal or state crime that is punishable by more than a year in prison and that bars (among other activities) the "distribution" of "a controlled substance[.]"  *Id.* § 4B1.2(b).  Although § 4B1.2 does not identify the drugs that qualify as controlled substances or otherwise define the phrase "controlled substance," the parties agree for purposes of this appeal that the phrase looks to the drug schedules in federal and state law.  *Cf. United States v. Clark*, 46 F.4th 404, 408 (6th Cir. 2022).

The district court treated Drake as a career offender in part because it found that his Ohio conviction for marijuana trafficking in 2016 qualified as a "controlled substance offense" under § 4B1.2.  We review its decision de novo.  *See id.* at 407.

To decide whether a state drug crime qualifies as a "controlled substance offense" under § 4B1.2(b)'s definition, we apply the "categorical approach." *See id.* at 407–08. This approach requires us to consider only the generic elements of a state drug crime and to ignore the specific conduct of the defendant who committed the crime. *See id.* If a hypothetical defendant could have committed the crime through *any* conduct that would not satisfy § 4B1.2's federal definition of "controlled substance offense," the state crime categorically falls outside that federal definition. *See id.* at 408. In other words, the categorical approach requires us to identify the "least culpable conduct" that the state drug crime covers and to ask whether this conduct meets § 4B1.2's definition of "controlled substance offense." *Id.* (citation omitted).

In this appeal, the parties agree on the least culpable conduct for Drake's 2016 marijuana conviction: a hypothetical defendant could have committed this offense by distributing hemp because Ohio's definition of "marijuana" included that substance back in 2016. So we must ask whether this hemp crime falls within § 4B1.2's definition of "controlled substance offense."

The answer to this question depends on the time that matters for § 4B1.2's definition. According to Drake, § 4B1.2's definition takes a *time-of-sentencing* approach that asks whether all the substances that could have supported his 2016 marijuana offense would fall within the federal and state drug schedules as they existed in 2023 when the district court sentenced him. By then, Congress and the Ohio legislature had amended their drug schedules to exclude hemp. *See* 21 U.S.C. § 802(16)(B); Ohio Rev. Code § 3719.01(M). Drake thus asserts that the 2016 version of his offense included conduct (distributing hemp) that does not meet § 4B1.2's definition of "controlled substance offense." According to the government, § 4B1.2 takes a *time-of-conviction* approach that asks whether all the substances that could have supported Drake's state-law offense would have fallen within the federal and state drug schedules as they existed in 2016 at the time of his prior crime. Because those schedules listed hemp, the government asserts that the hypothetical distribution of hemp also meets § 4B1.2's definition of "controlled substance offense."

Our precedent has already resolved this timing debate. In *Clark*, we rejected a defendant's (nearly identical) argument that a Tennessee drug crime did not qualify as a controlled substance offense because it covered hemp when the defendant committed it.

*See* 46 F.4th at 407–08. We held that § 4B1.2 adopted a time-of-conviction rule. *See id.* at 408. That rule foreclosed the defendant's claim because the federal and Tennessee drug schedules included hemp when he committed his prior crime. *See id.* at 408, 415. And as many of our cases have recognized since *Clark*, we must follow that precedent. *See United States v. Johnson*, 2024 WL 4648088, at *4 (6th Cir. Nov. 1, 2024) (citing cases); *see also United States v. Tornes*, 2023 WL 5973174, at *1 (6th Cir. Sept. 14, 2023); *United States v. Baker*, 2022 WL 17581659, at *2 (6th Cir. Dec. 12, 2022).

This time-of-conviction rule dooms Drake's claim. It means that § 4B1.2's definition of "controlled substance offense" incorporates the drug schedules from 2016. Because those drug schedules included hemp, Drake's state-law trafficking offense falls within § 4B1.2's federal definition under the categorical approach. *See Clark*, 46 F.4th at 408.

To his credit, Drake concedes that *Clark* forecloses his claim. But he says we need not follow that precedent because of an intervening Supreme Court decision: *Brown v. United States*, 602 U.S. 101 (2024). *Brown* held that the definition of "serious drug offense" in the Armed Career Criminal Act (a similar recidivism statute) incorporated the time-of-conviction approach that *Clark* had adopted for the definition of "controlled substance offense" in § 4B1.2. *See id.* at 108–23. At first blush, then, *Brown* would seem to hurt (not help) Drake. In a footnote, though, the Supreme Court distinguished the Armed Career Criminal Act from the Sentencing Guidelines. *See id.* at 120 n.7. The defendant in *Brown* had suggested that district courts typically apply the most up-to-date version of the guidelines manual when they sentence defendants. *See id.* But the Court doubted the "relevan[ce]" of this sentencing practice. *Id.* Congress had instructed district courts to use the guidelines "in effect on the date the defendant is sentenced," but it had provided no similar instruction for the Armed Career Criminal Act. *Id.* (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)).

Yet *Brown*'s footnote does not permit us to depart from *Clark*. To be sure, at least one circuit court has distinguished § 4B1.2 from the Armed Career Criminal Act based on the footnote's logic: that courts must use the guidelines manual in effect at the time of sentencing. *See United States v. Minor*, 121 F.4th 1085, 1091–93 (5th Cir. 2024). *Minor* also became the first post-*Brown* decision to disagree with *Clark* by adopting a time-of-sentencing approach for

§ 4B1.2. *See id.* at 1089–90. But *Clark* has already held that the requirement to apply the guidelines manual in effect at the time of sentencing does not justify *Minor*'s time-of-sentencing approach. *See* 46 F.4th at 411–12. As *Clark* explained, the requirement that district courts use the current manual "leaves unanswered" the critical question: what does "the term 'controlled substance'" in § 4B1.2 of that current manual mean? *Id.* at 411. And *Clark* relied on the text and purpose of § 4B1.2 to adopt a time-of-conviction approach. *See id.* at 408–15. Nothing in *Brown*'s footnote undermines this reasoning. *See Johnson*, 2024 WL 4648088, at *4. And the rest of *Brown* "lends support to our holding in *Clark*" because it invoked the same reasoning. *Id.*; *see also United States v. Gordon*, 111 F.4th 899, 901 n.4 (8th Cir. 2024); *United States v. Waiters*, 2024 WL 2797919, at *5 (11th Cir. May 31, 2024) (per curiam). In short, *Clark* continues to bind us after *Brown*. And *Clark* shows that the district court correctly treated Drake as a career offender when calculating his guidelines range.

*Substantive Reasonableness*. Even if the district court correctly treated Drake as a career offender, he next argues that the court still imposed a substantively unreasonable sentence. This type of claim does not challenge the way the district court calculated Drake's guidelines range or the process it used to impose the sentence. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). The claim instead challenges the court's "bottom-line number" as unreasonable when measured against the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019). Yet we defer to a district court's conclusions about the § 3553(a) factors that matter the most in each case, so a defendant raising such a claim must show that the court abused its significant sentencing discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). And Drake's burden is even more demanding because the court imposed a 200-month sentence in the bottom half of his guidelines range. His sentence thus triggers an appellate presumption of reasonableness. *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Drake has not overcome this presumption. To start, the district court's decision to impose a within-guidelines sentence accounted for "the need to avoid unwarranted sentence disparities among" similarly situated defendants. 18 U.S.C. § 3553(a)(4)(A), (6). Next, the court chose its specific sentence within this range because of Drake's extensive record. *See id.*

§ 3553(a)(1).  That record comfortably fell within the highest criminal history category even though 12 of Drake's convictions did not factor into his criminal history score.  Drake's record also included dozens of prison infractions.  And it included repeated threats of violence against women.  Even Drake conceded that an objective observer looking at his background would fear that he "pose[d] a danger to the community" when out of prison (or even within it).  Sent. Tr., R.73, PageID 350.  So the need to deter Drake and protect the public from his conduct sat at the forefront of the district court's sentence.  18 U.S.C. § 3553(a)(2)(B)–(C).

In response, Drake argues that the court's sentence did not adequately account for several mitigating factors, including the horrific abuse he suffered as a child, his "mental illness," and his "borderline intellectual functioning[.]"  Appellant's Br. 18–19.  These factors, Drake says, reduced his moral blameworthiness and the need for a long sentence "to provide just punishment[.]"  18 U.S.C. § 3553(a)(2)(A).  Perhaps so.  But the district court had the discretion to focus on some penological goals (deterrence and incapacitation) over others (retribution) when choosing the sentence.  *See Gall*, 552 U.S. at 51; *United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022); *see also* 1 Wayne R. LaFave, *Substantive Criminal Law* § 1.5(a)(1)–(a)(7), Westlaw (database updated Oct. 2024).  And Drake's claim that the court should have weighed these various penological goals differently merely asks us to "rebalance the § 3553(a) factors"— something that falls outside our reviewing role.  *United States v. Holt*, 116 F.4th 599, 617 (6th Cir. 2024) (citation omitted).

Drake next argues that the court should have given him a lower sentence because his 200-month prison term is "more than six-and-a-half times longer" than the longest term that he has ever served.  Appellant's Br. 19.  We fail to see why this fact supports a lower sentence.  To the contrary, the district court could have reasonably concluded that Drake's continued criminality called for a longer sentence because shorter sentences have not adequately deterred him.

We affirm.