RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LEONEL MILLER HINOJOSA, JR.,

*Defendant-Appellant.*

No. 24-1150

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00279-1—Janet T. Neff, District Judge.

Decided and Filed:  May 30, 2025

Before:  SUTTON, Chief Judge; BATCHELDER and MURPHY, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

### OPINION

_____

MURPHY, Circuit Judge.  A district court originally sentenced Leonel Hinojosa to 240 months in prison for shooting a man during a robbery.  But we vacated his sentence because the record left unclear whether the court properly used one of Hinojosa's prior convictions to calculate his guidelines range.  *See United States v. Hinojosa*, 67 F.4th 334, 343–47 (6th Cir. 2023).  The court could rely on this prior conviction only if it "resulted in" Hinojosa's incarceration during "any" time in the 15 years before he committed his current offenses.

U.S.S.G. § 4A1.2(e)(1). On remand, the government presented additional evidence about Hinojosa's criminal history. The record now shows that—but for this prior conviction—Hinojosa would have served less time in prison during the guideline's 15-year "lookback" period. And we hold that this "but for" causal connection between the prior conviction and the extra incarceration satisfies the guideline's "resulted in" language. Apart from this question, the district court also reasonably sentenced Hinojosa to 240 months due to his history of violence. This time, then, we affirm his sentence.

I

A district court convicted Hinojosa of possessing a firearm as a felon in 2012. *See Hinojosa*, 67 F.4th at 336. It sentenced him to five years of incarceration and three years of supervised release. *See id.* After Hinojosa served his prison term, he repeatedly violated the conditions of his supervised release. *See id.* at 337. Among other violations, Hinojosa committed a robbery on January 23, 2019. *See id.* During this robbery, he shot a man in the leg and stole "about two ounces of methamphetamine and $500 in cash." *Id.*

A jury convicted Hinojosa of three offenses for this violent crime: robbing his victims in violation of 18 U.S.C. § 1951(a), discharging a firearm during that crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and possessing ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Hinojosa to a total of 240 months' imprisonment for these three new offenses. *See Hinojosa*, 67 F.4th at 338. And because Hinojosa remained on supervised release when he committed the offenses, the court separately found that he had violated his conditions of supervised release. *Id.* So it also sentenced him to an additional 24 months' imprisonment to run consecutively to the 240-month term. *Id.*

On appeal, we affirmed Hinojosa's conviction and his 24-month sentence for the supervised-release violations. *See id.* at 338–43, 347. But we reversed his 240-month sentence for his new crimes. *See id.* at 343–47. When calculating his guidelines range, the court had added three points to his criminal history score based on a state assault conviction from 1994. *See id.* at 343. Yet the court committed a legal error when doing so. It assumed that it could count this conviction under "the *federal guideline's* standards" simply because state authorities

would count the conviction under "distinct *state-law* standards for assessing criminal history." *Id.* at 344.

On remand, the government introduced more evidence about how the prior conviction had affected Hinojosa's incarceration over the years. After considering this evidence, the district court found that the prior conviction met the guideline's standards for including a prior offense in a criminal history score. This conclusion showed that Hinojosa had a guidelines range of 120 to 150 months' imprisonment for his robbery and felon-in-possession offenses. He also faced a consecutive 120-month minimum sentence for discharging a firearm during a crime of violence. The court decided to reimpose the same within-guidelines sentence that it had issued before: a total of 240 months' imprisonment.

II

Hinojosa renews his challenge to his sentence. He now raises both procedural and substantive claims. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Procedurally, he argues that the district court miscalculated his guidelines range. Substantively, he argues that the court imposed an excessive sentence. Neither argument has merit.

*Procedural Reasonableness*. We start with the claim that Hinojosa raised in his last appeal: that the district court miscalculated his guidelines range by relying on his 1994 conviction to calculate it. *See Hinojosa*, 67 F.4th at 343–47. Section 4A1.2 of the Sentencing Guidelines instructs courts about when they may use a defendant's prior crimes to calculate the defendant's criminal history score. This guideline tells district courts to count a "prior sentence" only if the sentence falls within the "applicable time period" that the guideline identifies. *See* U.S.S.G. § 4A1.2(e) (capitalizations omitted). It then offers two paths for counting prior sentences that exceed a year and a month. It first says: "Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." *Id.* § 4A1.2(e)(1). It then adds an alternative path: "Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." *Id.*

The alternative path matters here. What does § 4A1.2(e)(1) mean when it says that a prior sentence counts toward a defendant's criminal history score if the sentence "*resulted in*" the defendant's incarceration during "any part" of the 15-year lookback period? *Id.* (emphasis added). An ordinary person would likely read the phrase to suggest that the sentence must "bring about" or "cause" the defendant's incarceration during some part of that period. *Hinojosa*, 67 F.4th at 346 (quoting *McGraw Hill's Dictionary of American Idioms and Phrasal Verbs* 560 (Richard A. Spears ed., 2004)). And courts generally interpret this type of causal language to adopt tort law's "but-for" causation test. *See Burrage v. United States*, 571 U.S. 204, 210–11 (2014) ("results from"); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("because of"); *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 265–66 (1992) ("by reason of"). So § 4A1.2(e)(1) presumably should adopt this "'background' rule" of interpretation too. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 332 (2020) (citation omitted). In other words, a sentence will normally result in incarceration during the lookback period if that incarceration "would not have occurred in the absence of—that is, but for—the" sentence. *Delligatti v. United States*, 145 S. Ct. 797, 807 (2025) (quoting *Burrage*, 571 U.S. at 211).

That said, we highlight two questions that we can save for another day. Question One: Is but-for causation *sufficient* to show the link between a prior sentence and incarceration during the lookback period? Or does § 4A1.2(e)(1)'s text contain other causation requirements, such as proximate cause? Courts have sometimes read a proximate-cause test into causation language. *See, e.g.*, *Holmes*, 503 U.S. at 267–68. But they have also sometimes read that language to exclude this requirement. *See, e.g.*, *United States v. Jeffries*, 958 F.3d 517, 520–24 (6th Cir. 2020). We need not consider the issue here because Hinojosa raises no proximate-causation arguments.

Question Two: Even if but-for causation suffices to show the required connection, is it always *necessary*? Common-law courts sometimes departed from this but-for test when "multiple sufficient causes independently, but concurrently, produce[d] a result." *Burrage*, 571 U.S. at 214. Take the classic example of separate fires that destroyed a home. If each fire would have leveled the home on its own, courts might hold a defendant liable for negligently

starting one of the fires without proof that it was a but-for cause of the destruction. *See Maxwell v. KPMG LLP*, 520 F.3d 713, 716 (7th Cir. 2008) (citing *Kingston v. Chicago & N.W. Ry.*, 211 N.W. 913 (Wis. 1927)). The government advocates for something like this principle here. It suggests that defendants often receive separate sentences for separate crimes that run concurrently during the 15-year lookback period. In this common scenario, the defendants would not have been incarcerated "but for" either of the sentences because they would have independently remained in prison on the other one. Does that fact mean that neither sentence qualifies as a cause of incarceration under § 4A1.2(e)(1)? Or might the guideline adopt something like this independent-cause exception to but-for cause? *Cf. United States v. Bartley*, 618 F. App'x 439, 443–44 (10th Cir. 2015). Ultimately, we need not consider this question either because the government has established but-for cause in this case.

To explain why, we set the stage with some background facts. The lookback period for Hinojosa started on January 23, 2004—15 years before he committed his current offenses on January 23, 2019. *See Hinojosa*, 67 F.4th at 346. And a state court sentenced Hinojosa for the prior crime at issue in this case in 1994. *See id.* The court convicted Hinojosa of an assault with the intent to do great bodily harm for shooting a victim in the head. *See id.* at 343. It sentenced him to an indeterminate prison range with a minimum of 54 months and a maximum of 120 months. *See id.* at 346. We thus must evaluate whether this 1994 sentence qualified as a but-for cause for *any* incarceration that Hinojosa served between January 23, 2004, to January 23, 2019.

Hinojosa's initial term of imprisonment for this sentence does not qualify. He was released on parole after he served the minimum term in February 2000. Rep., R.232-1, PageID 2137. So he completed this prison term years before the 2004 start of the lookback period.

We thus turn to his next prison term. In early 2001, Hinojosa fractured a coworker's skull with a hammer. *See Hinojosa*, 67 F.4th at 346. For this new assault, the state authorities took Hinojosa back into custody sometime between June 11 and July 13, 2001. *Compare* State Rep., R.159, PageID 1629, *with* Rep., R.232-1, PageID 2137. From that time until March 2002, he served prison time based only on his 1994 sentence because the assault of his coworker had violated the conditions of his parole. Schnell Tr., R.237, PageID 2200. Yet again, though, this period ended before the 2004 start of the lookback period. So it cannot qualify either.

While Hinojosa served this additional time on the 1994 sentence, prosecutors charged him with a new crime for the 2001 assault. In March 2002, a state court convicted him of a second assault and imposed a new sentence of 57 months to 120 months for this crime. Judgment, R.159, PageID 1635. He served his minimum sentence (57 months) for the 2001 assault starting in March 2002. That fact led to his release in December 2006. Rep., R.232-1, PageID 2136.

A portion of this third prison stint satisfies the but-for cause test. Why? Hinojosa did not receive any credit toward his March 2002 sentence for the eight or so months that he spent in prison after the 2001 assault but before that 2002 sentence. As noted, he instead served that time based on the earlier 1994 sentence. Schnell Tr., R.237, PageID 2200. Without the earlier 1994 sentence, though, Hinojosa would have received this credit. *See* Mich. Comp. Laws § 769.11b. In that counterfactual world, then, he would have been released on parole at least eight months earlier in April 2006 (not in December 2006). So "but for" the 1994 sentence, Hinojosa would not have served those eight months in prison. *Delligatti*, 145 S. Ct. at 807 (quoting *Burrage*, 571 U.S. at 211). That time also fell within the lookback period. Hinojosa's 1994 sentence thus "resulted in" his incarceration during "part" of this period. U.S.S.G. § 4A1.2(e)(1). And the district court properly counted this sentence toward Hinojosa's criminal history score.

*Substantive Reasonableness*. Hinojosa alternatively challenges his 240-month sentence as substantively unreasonable. He claims that his sentence is "too long" when evaluated against the sentencing factors in 18 U.S.C. § 3553(a). *Parrish*, 915 F.3d at 1047 (citation omitted). These types of challenges rarely succeed. We must defer to the district court's decision about how the § 3553(a) factors balance out in each case. *See United States v. Drake*, 126 F.4th 1242, 1246 (6th Cir. 2025). And because the court chose a sentence within Hinojosa's guidelines range, we must presume the reasonableness of this sentence. *See id.*

Hinojosa has fallen well short of rebutting this presumption. The district court's explanation for its sentence reasonably balanced the § 3553(a) factors. On the aggravating side of things, the court found it "difficult to downplay the seriousness of the offense" because Hinojosa had shot a man merely for arguing with him about drug prices. Sent. Tr., R.248, PageID 2284. And his current offenses followed a pattern of committing "frightening violent

behavior" against others.  *Id.*, PageID 2285.  On the mitigating side, Hinojosa had an abusive childhood and lacked any "major misconducts" in his most recent time in prison.  *Id.*  Still, the court did not believe that Hinojosa's troubled childhood could "excuse" his conduct and found it "difficult" to credit the claim that his recent time in prison showed "a changed and rehabilitated person[.]"  *Id.*  Given the need to protect the public and the "seriousness" of the crimes, the court rejected Hinojosa's request for a variance.  *Id.*, PageID 2286–87.  It thus chose a within-guidelines sentence.

Hinojosa responds in two ways.  He first repackages his procedural complaint against the use of his 1994 assault as a substantive one.  Yet the court reasonably recognized that this older offense—in which Hinojosa shot someone in the head—represented another example of his repeated pattern of violence.  And although Hinojosa suggests that the court itself found the use of this prior crime "unfair," he misinterprets the court's statement.  *Id.*, PageID 2273.  The court explained that Michigan's method of counting prior crimes could conceivably extend a sentence "out to infinity," which the court found excessive in theory.  *Id.*  But it said nothing about any unfairness in Hinojosa's specific case.

Hinojosa next suggests that the district court wrongly discredited his prison rehabilitation since his first sentencing.  *See Pepper v. United States*, 562 U.S. 476, 504–05 (2011).  Yet the court found that his good behavior in prison for a few months did not suffice to show that he had changed given his lengthy record of misconduct.  The court thus reasonably weighed these factors against each other.  And that conclusion dooms Hinojosa's claim under our deferential standard of review.  *See Drake*, 126 F.4th at 1246–47.

We affirm.