RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROBERT MESSERSMITH,

*Defendant-Appellant*.

No. 25-5496

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:24-cr-00020-1—Danny C. Reeves, District Judge.

Decided and Filed:  January 13, 2026

Before:  GILMAN, GRIFFIN, and MURPHY, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Christopher Wiest, CHRIS WIEST, ATTY AT LAW, PLLC, Covington, Kentucky, for Appellant.  Charles P. Wisdom Jr., Amanda Harris Huang, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

**OPINION**

─────────────────

GRIFFIN, Circuit Judge.

Robert Messersmith pleaded guilty to possession of a firearm by a convicted felon.  The district court sentenced him to a bottom-of-the-Guidelines sentence.  Messersmith argues that the government breached the plea agreement at sentencing and that his sentence is unreasonable.  We disagree and affirm.

I.

While Messersmith was out on bond for a second-degree burglary charge, Kentucky police attempted to pull him over for speeding. Messersmith sped away until he got his truck stuck in a pond. The officer following him ran to the truck. Messersmith leaped out and fled on foot. Officers did not capture him that day.

Kentucky police returned to the scene the next day to help remove the truck. They spotted a nearby SUV with Messersmith's girlfriend in the passenger seat. She started honking the horn. Officers saw Messersmith "off in the distance fleeing in the opposite direction," but none pursued him. His girlfriend then consented to a search of the SUV, where officers discovered several firearms and ammunition. Officers again observed Messersmith in the distance and this time pursued. He tried to flee but was caught and arrested; he told officers that the guns were his and that he had returned to recover them.

Because Messersmith had a previous felony conviction, a grand jury indicted him for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Messersmith pleaded guilty pursuant to a plea agreement under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. In the plea agreement, Messersmith and the government agreed to recommend a base offense level of 20 because Messersmith "committed the instant offense subsequent to sustaining one felony conviction of a controlled substances offense." The parties also agreed to recommend a two-level enhancement for use of multiple firearms and a three-level reduction for acceptance of responsibility. The "recommendation d[id] not bind the" district court. And either party could "object to or argue in favor of other calculations."

The presentence report made different recommendations, however. It calculated a base offense level of 24 after determining that Messersmith had two prior controlled substance felony convictions, not the one conviction the parties had contemplated during plea negotiations. The presentence report also recommended a two-level enhancement for reckless endangerment while fleeing law enforcement, a two-level increase due to the number of firearms, and a three-level reduction for acceptance of responsibility. These adjustments resulted in a total offense level of

25. With a criminal history category of VI and a ten-year statutory maximum, the presentence report recommended a Guidelines range of 110 to 120 months of imprisonment.

At sentencing, Messersmith acknowledged the difference between the plea agreement and the presentence report and agreed that the latter correctly calculated both the base and total offense levels. He nonetheless requested a sentence between 77 and 96 months based on a total offense level of 21.

The government similarly agreed that the presentence report correctly applied the Guidelines, whereas the plea agreement failed "to accurately and correctly" do so. The government explained that it had missed an additional conviction for manufacturing methamphetamine but recognized that it was "prohibited from breaching the plea agreement" because "it's a contract" that "binds [the government], [and] binds the defendant, but [] doesn't bind the [c]ourt." Ultimately, the government recommended 96 months of incarceration based on a total offense level of 21. This calculation was based on the base offense level of 20 recommended in the plea agreement, while also now arguing for the application of the reckless endangerment enhancement.[1]

The district court adopted the presentence report's Guidelines range of 110 to 120 months of imprisonment. After considering the sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Messersmith to 110 months of imprisonment.

Messersmith timely appealed.

## II.

Messersmith argues that the government breached the plea agreement when it failed to object to (1) the reckless endangerment enhancement and (2) the base offense level of 24

---

[1]During plea negotiations, Messersmith and the government "agreed to disagree" about whether the reckless endangerment enhancement applied. During the sentencing hearing, Messersmith conceded that the first time he fled law enforcement, he met the requirements for the enhancement.

calculated in the presentence report.  And he contends that his sentence is procedurally and substantively unreasonable.[2]

A.

We review Messersmith's plea-agreement arguments for plain error because he did not make them at sentencing.  *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002).  To prevail, he must show an (1) error (2) that was plain, and (3) affected his "substantial rights." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation modified).  He has not done so.

Begin with the government's position that the reckless endangerment enhancement applied.  The plea agreement did not obligate the government to object to an enhancement the parties had not taken off the table.  To the contrary, the agreement expressly allowed either party to "object to or argue in favor of other calculations."  And where a plea agreement expressly preserves the government's ability to argue in favor of other calculations, the government does not breach the agreement by exercising that reserved authority—or, in this case, by not objecting when the PSR essentially does the same.  *Cf. United States v. Fitch*, 282 F.3d 364, 366–68 (6th Cir. 2002) (finding a breach when a plea agreement's ambiguous restriction on the use of "other relevant conduct" at sentencing was construed against the government to bar a leadership-role enhancement); *see also United States v. Simmonds*, 62 F.4th 961, 967 (6th Cir. 2023) ("If, upon reading the plea agreement, the scope of the government's promises presents an arguable interpretive question, then by definition any breach cannot qualify as clear or obvious." (citation modified)).

Nor did the government breach the plea agreement by agreeing with—rather than objecting to—the presentence report's calculation of a base offense level of 24.  The government does not breach a plea agreement when it admits that the plea agreement's Guidelines calculation

---

[2]Messersmith also argues that his trial counsel performed ineffectively.  A defendant usually "may not raise ineffective assistance of counsel claims for the first time on direct appeal" because the record has not been "sufficiently developed for assessing the merits of the allegation of ineffective assistance." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (citation modified).  Such claims are "best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255." *United States v. Brown*, 332 F.3d 363, 369 (6th Cir. 2003) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).  The "rare" exception applies when error is "apparent from the existing record." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006).  The record does not show any apparent error.  We thus decline to address his ineffective assistance claims.

was erroneous, agrees with the presentence report's corrected figure, and continues to advocate for a sentence consistent with the plea agreement's terms rather than recommending the higher Guidelines range. *United States v. Carter*, 814 F. App'x 1000, 1007–08 (6th Cir. 2020). Here, after the presentence report corrected Messersmith's criminal history based on the additional previous conviction, both parties agreed that the correct base offense level was 24 and that the district court had an independent obligation to calculate the Guidelines correctly. Yet the government did not recommend this higher base offense level; instead, it joined Messersmith in urging application of a total offense level of 21. Accordingly, the government did not breach the plea agreement.

Finally, even if the government's assent to the presentence report's higher offense level constituted a breach of the plea agreement, Messersmith cannot show prejudice if he "likely would not have obtained" the specific benefit in any event. *Puckett v. United States*, 556 U.S. 129, 142 (2009). The district court was independently obligated to calculate the Guidelines correctly based on the two qualifying felonies identified in the presentence report. There is no reasonable probability that the court would have calculated his Guidelines range based off a lower base offense level of 20 once the presentence report established the existence of the prior convictions. Because Messersmith received a sentence at the bottom of the applicable range, the government's candor did not deprive him of any reasonable expectation. *See United States v. Keller*, 665 F.3d 711, 714 (6th Cir. 2011) (finding no error when the district court sentenced the defendant within the range the presentence report suggested, which was higher than that recommended in the plea agreement).

B.

Messersmith also challenges the procedural and substantive reasonableness of his sentence.

1.

We review the procedural reasonableness of Messersmith's sentence for plain error because he did not object to his sentence at sentencing. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Our task is to "ensure that the district court committed no significant

procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Messersmith concedes that the district court "addressed the [G]uidelines," "treated the range as advisory," and "explained why it chose the sentence." But purportedly the district court failed to consider the § 3553(a) factors—specifically his "history and characteristics"—and thus his sentence is procedurally unreasonable.

Although the § 3553(a) factors guide a district court's sentencing decision, it need not "discuss each and every" one. *United States v. Husein*, 478 F.3d 318, 330 (6th Cir. 2007). The district court has discretion to determine which factors are most relevant. *United States v. Drake*, 126 F.4th 1242, 1246 (6th Cir. 2025).

Here, the district court fulfilled its statutory charge. The district court explained that it considered Messersmith's arguments about what "happened at the time that he was a child." 18 U.S.C. § 3553(a)(1). And this is why the district court recommended treatment for Messersmith's mental health and substance abuse issues. *Id.* § 3553(a)(2)(A), (D). But given Messersmith's extensive criminal history, the district court believed a longer sentence was necessary to "promote respect for the law," "provide just punishment for the offense," "protect the public," and serve as a deterrent. *Id.* § 3553(a)(2)(A)–(C).

At base, the district court listened to Messersmith's arguments and accounted for his unique history and circumstances when sentencing him. *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc). No procedural error occurred.

2.

We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Gates*, 48 F.4th 463, 469, 476 (6th Cir. 2022). And we apply a rebuttable presumption that a within-Guidelines sentence is reasonable. *Vonner*, 516 F.3d at 389–90. A sentence is substantively unreasonable when it is "too long" because "the court placed too much

weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

The district court sentenced Messersmith to 110 months, the bottom of the Guidelines range. He argues the district court focused too "heavily on [his] criminal history" rather than "credit[ing]" his "troubled and abusive upbringing" as mitigating factors. The record belies that contention.

In his sentencing memorandum, Messersmith described his "deeply troubled childhood, marked by trauma, neglect, and horrible abuse." He suffered sexual abuse beginning at five years old. He ran away from home and entered foster care. And Messersmith's foster parents physically abused him. All told, the "experiences left deep emotional and psychological scars that were never addressed," which led to extensive substance abuse.

The district court considered his upbringing and explained its impact on the sentence. His difficult past is why the district court recommended substance abuse and mental health treatment, in addition to job skills and vocational training. But the district court also considered Messersmith's upbringing in conjunction with the need to protect the public. It found critical the need to deter Messersmith and others from committing more crimes given his criminal history and flagrant disrespect for the law. He was arrested when he was 19 for manufacturing methamphetamine. Nine months later he was arrested for possessing marijuana. And two and a half years after that he was sentenced to three years in prison for second-degree theft. His record also includes arrests for public intoxication, disorderly conduct, assault, more theft, more illegal drug possession, trafficking methamphetamine, and burglary. The choice to place greater weight on deterrence was well within the district court's discretion. The district court may emphasize "some penological goals . . . over others," and "we defer" to that decision. *Drake*, 126 F.4th at 1246.

In sum, after carefully considering the § 3553(a) factors, the district court imposed a reasonable, individualized sentence. Messersmith's sentence is not substantively unreasonable merely because he believes that the court should have weighed the factors differently. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013).

III.

We affirm the judgment of the district court.